IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**BRANDON THOMPSON,**

      Petitioner,

v.

      Civil Action No.: 5:19cv11
      (Judge Stamp)

**FREDERICK ENTZEL, Warden,**

      Respondent.

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On January 31, 2019, Petitioner Brandon Thompson ("Petitioner"), acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 ECF No. 1 (the "Petition"). On February 6, 2019 Petitioner paid the $5 filing fee. ECF No. 5. On April 10, 2019, the Court entered an Order to Show Cause why the Petition should not be granted. ECF No. 6. On May 1, 2019, Respondent filed a Motion to Dismiss the Petition or, in the Alternative, a Motion for Summary Judgment. ECF No. 8. On May 2, 2019, the undersigned entered an Order and Roseboro Notice [ECF No. 9], informing Petitioner of his right and obligation to respond to the Government's motion within 21 days. On August 9, 2019, Petitioner filed a Response [ECF No. 16] and a Memorandum. ECF No. 17. The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied.

## II.     BACKGROUND

Petitioner is a federal inmate serving an aggregate 15 year sentence for convictions in the United States District Court for the Western District of Pennsylvania for "Conspiracy to Distribute 100 grams or more of Heroin," "Using, Carry, Brandish, or Discharge a Firearm in Relation to a Drug Trafficking Crime," and "Possession with Intent to Distribute 500 Grams or more of Cocaine." ECF No. 8-2 at p. 7. His projected release date is April 26, 2026, via good conduct time. Id. at p. 9.

On March 26, 2018, while at FCI Loretto, Petitioner was charged in Incident Report No. 310-5384 with prohibited offense Code 224, "Assaulting Any Person." ECF No. 8-2 at p. 11. FCI Loretto's Special Investigative Services ("SIS") conducted an investigation which included a review of video footage. The footage showed Petitioner throwing closed hand punches at another inmate in the Northeast hallway on February 25, 2018 at 11:12 PM. Investigators observed Petitioner striking the other inmate four additional times with left-hand punches as the inmate tried to shield his face. Id. Petitioner received a copy of the Incident Report on March 27, 2018 [Id.] and received an amended Report on April 30, 2018. ECF No. 8-2 at p. 23. On March 29, 2018, the Unit Disciplinary Committee ("UDC") referred the charge to the Disciplinary Hearing Officer ("DHO") for further action. Id. at 11.

On March 29, 2018, Petitioner received notice that he would have a discipline hearing before the DHO. ECF No. 8-2 at p. 20. On the same day, Petitioner acknowledged and signed the form which outlines the rights which would be afforded to him at his upcoming hearing before the DHO. After receiving notice of his right to do so, Petitioner declined the opportunity to call witnesses and present documentary evidence

on his behalf or receive the assistance of a staff representative at the hearing. Id.

Petitioner was scheduled for an April 26, 2018 hearing before DHO Montgomery; however, the hearing was suspended and DHO Montgomery remanded the Incident Report back to the investigator for purposes of clearing the facts in Section 11 of the Report. Therefore, the incident report was re-written on April 30, 2018, and on April 30, the 2018, the amended Incident Report was delivered to Petitioner. ECF No. 8-2 at p. 23.  On May 1, 2018, Petitioner received notification regarding that the delay in the process as a result of the DHO's remand. ECF No. 8-2 at p. 22.

The DHO heard the amended Incident Report on May 22, 2018. In his report, dated August 3, 2018, the DHO determined that Petitioner had committed the prohibited Code 224 offense. The DHO sanctioned Petitioner with disallowance of 27 days Good Conduct Time. 30 days Disciplinary Segregation and a 180-day loss of visiting privileges. ECF No. 8-2 at pp. 25-28.

The DHO detailed the evidence which he had relied upon when finding Petitioner guilty. Specifically, the DHO stated hat he had relied upon, *inter alia*, the reporting staff's written statement, Petitioner's testimony during the DHO hearing in which he admitted the incident report was true, the photograph sheet dated February 28, 2018 of Petitioner fighting in the Northeast Hallway; the four photograph sheets dated February 25, 2018 depicting his injuries; the injury assessment of Petitioner dated February 25, 2018; the video footage of the fight that took place on February 25, 2018; and the 13 page SIS Report. ECF No. 8-2 at pp. 26-27.  The report also included the reasons for Petitioner's sanctions. To illustrate, the report provided that:

> The action/behavior on the part of fighting another person, and assaulting another person, threatens the health, safety, and welfare of not only

himself, but of all persons, whether another inmate or any other person, who are involved in the act. This will not be tolerated. Past evidence has shown that disruptive conduct has led to serious damage to the institution, as well as serious injury to staff and inmates involved and not involved in the disruptive conduct. The sanctions imposed by the DHO were taken to inform the inmate that he will be held responsible for his actions/behaviors at all times.

The sanction involving Disciplinary Segregation was taken to deter any further negative behavior, and to enforce the standard of inmates being held responsible for their actions.

The sanctions imposed involving Disallowance of Good Conduct Time, and Loss of Privileges-visit, was also taken to enforce the standard of inmates being held responsible for their actions. Past evidence has supported that this type of behavior can be destructive to the Security or Orderly Running of a BOP Facility, and ABSOLUTELY will not be tolerated.

ECF No. 8-2 at p. 28. The DHO Report advised Petitioner that he had the right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. Id. Petitioner did not file an appeal.

### III  PLEADINGS

**A.    The Petition**

Petitioner asserts that the BOP violated his right to due process and violated the Accardi Doctrine. In support of this assertion, Petitioner alleges that his appeal had to be in the regional office within 20 days of the hearing. However, he did not receive a copy of the report until December 11, 2018, which he calculates as 203 days after the hearing. Petitioner alleges that failure to follow policy requires the expungement of the conviction to ensure that staff will not continue to disregard BOP policy. He further alleges that vacature and expungement of the offense is the only action that will deter staff from future actions violating policy. In addition to requesting restoration of his Good

4

Conduct Time, Petitioner all requests that his custody classification be re-calculated.

**B.      Respondent's Motion to Dismiss or for Summary Judgment**

Respondent advances the following arguments in response to the petition:

1. Petitioner failed to exhaust his administrative remedies regarding Incident Report No. 3105384 and is thus precluded from filing this Petition.
2. Petitioner's due process rights were not violated during the disciplinary process.
3. The evidence relied upon by the DHO was enough for a finding of guilt in Petitioner's case.

**C.      Petitioner's Response**

In response, Petitioner alleges that there are genuine issues of material fact that preclude dismissal or summary judgment. Petitioner again argues a violation of the Accardi Doctrine and maintains that his due process rights were violated when FCI Loretto staff failed to provide him with the DHO's findings in a timely manner, He further argues that it has become the practice of BOP staff to take many months to provide an inmate with the DHO report which is contrary to BOP regulations. He continues to argue that an inmate only has 20 days to appeal a DHO's findings and sanctions but the DHO report must be filed with the appeal. He further argues that when the DHO report is provided months later, and the inmate attempts to appeal, the appeal is rejected by the Regional Office for being past the 20-day period. Finally, he maintains that his failure to exhaust was due to the failure of staff to provide him with the DHO report.

<h2 style="text-align:center">IV. <u>Legal Standard</u></h2>

1.      **Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations" but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th

Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### 2. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So, too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from

which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## V. DISCUSSION

A federal prisoner challenging a disciplinary proceeding under § 2241 must exhaust his administrative remedies prior to filing suit. See McCling v. Shearin, 90 F. Appx. 444, 445 (4th Cir. 2004). Moreover, the "[f]ailure to exhaust may only be excused upon a showing of cause and prejudice." Id.

Regarding disciplinary actions, the exhaustion of administrative remedies is initiated by first filing an appeal of the disciplinary action with the Regional Office within 20 days of receiving **written notification** of the disciplinary action. See 28 C.F.R. § 542.14(d)(2) (emphasis added). If unsatisfied with that response, the petitioner may file an appeal with the Central Office within 30 days of the date the Regional Director signed the response. Id. Where an appeal is rejected at the Regional Level, and the inmate is not given the opportunity to correct the defect and resubmit, the inmate may appeal that rejection to the Central Office. See 28 C.F.R. § 542.17(c). The Central Office may affirm the rejection, may direct the submission be accepted at the lower

level, or may accept the submission as filed. Id. "Appeal to the General Counsel is the final administrative appeal." See 28 C.F.R. § 542.15(a).

Here, there is no dispute that Petitioner failed to exhaust his administrative remedies regarding his disciplinary proceeding.[1] Petitioner alleges that the BOP failed to provide him with written findings of fact within the "20 day period," thereby failing to follow its own policy and preventing him from being able to appeal. Accordingly, Petitioner maintains that the BOP violated the Accardi Doctrine[2].

Following a disciplinary hearing, BOP policy requires the DHO to provide the inmate with a written report. See 28 C.F.R. § 541.8(h). The requirement and procedures for the written report are as follows:

(h) Written Report. You will receive a written copy of the DHO's decision following the hearing. The DHO is not required to prepare a verbatim record of the hearing. The DHO's written report will document the following:

(1) Whether you were advised of your rights during the DHO process;
(2) The evidence relied on by the DHO;
(3) The DHO's decision;
(4) The sanction imposed by the DHO; and
(5) The reason(s) for the sanction(s) imposed.

As evidence by these requirements, 28 C.F.R. 541.8(h) does not provide a time period for when the DHO's written report is to be provided to an inmate. However, BOP Program Statement 5270.09 provides that **ordinarily** the DHO gives the inmate a written copy of the decision and disposition within 15 working days after the DHO

---

[1] In fact, Petitioner has never filed an administrative remedy during his designation to the BOP. ECF No. 8-3 at p. 2.

[2] The Accardi Doctrine provides that when an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954).

makes his/her decision. Therefore, the policy does not mandate that the inmate receive the report within 15 days or within any specified time. Therefore, there is no violation of the Accardi Doctrine, and Petitioner's pending habeas petition is subject to dismissal for failure to exhaust. Moreover, even if the Court were inclined to excuse exhaustion, his petition fails to state a proper ground for relief.

Prison disciplinary proceedings are not criminal prosecutions. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Therefore, prisoners do not enjoy "the full panoply of due process rights [in prison disciplinary proceedings that are] due a defendant in . . . [criminal] proceedings." Id. When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

1. giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

Id. at 564-571.

In the present case, the undersigned finds that Petitioner was provided all the due process required of disciplinary proceedings. First, Petitioner's disciplinary hearing was held on May 22, 2018, and he was provided with a copy of the revised Incident

Report on April 30, 2018. Therefore, Petitioner received a copy of the Incident Report more than twenty-four hours before the disciplinary hearing.

Second, after the disciplinary hearing, Petitioner was provided with a report of what occurred during the hearing, which included the evidence upon which the DHO had relied and the reasons for Petitioner's sanctions. Third, Petitioner was afforded the opportunity to call witnesses on his own behalf, which he declined, and to present a defense during the hearing. Fourth, Petitioner was advised of and declined his right to a staff representative during the hearing. Finally, Petitioner was provided with an impartial fact finder during his disciplinary hearings because, in accordance with BOP regulations, the DHO was not a reporting official, investigating officer, UDC member or witness and did not play a role in referring the charges. See 28 C.F.R. § 541.16(b).

The results of a prison disciplinary proceeding will be upheld so long as there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 455. (1985). When determining whether this standard is satisfied:

> [No] examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence [is needed]. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . .

Id. at 457. In this case, the DHO found Petitioner had committed a violation of Prohibited Act Code 224 "Assaulting Any Person". Because the Petitioner admitted the incident report was true and the DHO reviewed the CD of the video footage of the incident, the undersigned finds that the DHO's decision is supported by some evidence.

Finally, the undersigned notes that a petition for habeas corpus relief allows a federal inmate to seek "immediate release or a speedier release from" confinement. Presier v. Rodriquez, 411 U.S. 475, 498 (1973). Therefore a § 2241 claim only permits

11

a petitioner to assert a liberty interest. In the instant case, aside from the loss of GCT, Petitioner's sanctions, including disciplinary segregation and loss of visitation privileges do not involve a liberty interest, because they do not impact the length of his confinement. Therefore, they do not state a claim for relief.

Likewise, to the extent that Petitioner alleges that the BOP improperly changed his security classification, the same is not cognizable in a habeas petition. A federal prisoner has no constitutional right to a specific custodial security classification. Moody v. Daggert, 429 U.S. 78, 88, n 9 (1978). An inmate's classification is administrative and prison officials can change an inmate's security classification "for almost any reason or no reason at all." Brown v. Ratledge, No. 7-16-CV-00303, 2017 WL 4404248, at *7 (W.D. Va. Sept. 29, 2017, aff'd, 709 F. Appx. 215 (4th Cir. 2018) (per curiam) (unpublished) (citations omitted). Moreover, any challenge to a custody or security classification is not cognizable in a 2241 habeas petition because such a challenge addresses the conditions of confinement and not the fact or duration of incarceration. See Moore v. Driver, No. 1:07CV166, 2008 WL 4661478, at 3 (N.D.W. Va. Oct. 21, 2008) (an inmate "cannot bring his claim regarding his custody classification in the context of § 2241 petition, because § 2241 petitions generally cannot be used to challenge conditions of confinement") (citing Preiser, 411 U.S. at 499-500).

## VI. RECOMMENDATION

For the foregoing reasons, it is hereby recommended that Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 8] be **GRANTED**, and the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court **specific written objections identifying those portions of the recommendation to which objection is made and the basis for such objections**. A copy of any objections shall also be submitted to the United States District Judge. A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATE: September 6, 2019

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE